## UNION WATER POWER CO. *vs.* CITY OF LEWISTON.

### Androscoggin.    Opinion March 27, 1901.

*Lease.    Waters.    Special Laws 1873, c. 386; 1875, c. 107.*

To ascertain the rights of parties which depend upon the construction of a lease, the situation of the parties, the acts to be performed under it, and the time, place and manner of performance may be considered. The intention of the parties is to be ascertained by an examination of the whole instrument, and of its effect upon any proposed construction; and such a construction should be adopted as will carry that intention into effect, although a single clause alone considered would lead to a different construction.

*Held;* that the lease of the Franklin Company conveyed to the city of Lewiston the right to use six hundred horse-power for pumping and distributing water to its inhabitants; and that this right continues, although the city of Lewiston has elected to take its water from Wilson pond, and not, as formerly, from the Androscoggin river.

The negotiations leading up to the lease, the evident understanding of all parties at the time it was made, the large price paid by the city of Lewiston, most of which would be lost if plaintiff's claim should be sustained, and the evident purpose of the city to obtain a supply of water, either from the river or the pond, as it might elect, with power to pump it, lead irresistibly to this conclusion.

On report.    Judgment for defendant.

Case for diverting water. The defense was, that whatever water was drawn, or diverted, was done by right and by authority of the Franklin Company, the plaintiff's predecessor in title, and by mutual agreement between the parties, by lease and other writings, for which it paid the sum of $200,000.

*W. H. White and S. M. Carter; J. W. Symonds, D. W. Snow, C. S. Cook and C. L. Hutchinson,* for plaintiff.

*E. Foster and O. H. Hersey; J. L. Reade,* for defendant.

*J. B. Cotton,* argued elaborately for plaintiff.

SITTING:    WISWELL, C. J., EMERY, WHITEHOUSE, FOGLER, JJ.

STROUT, J.    The contention between these parties depends upon the construction of the following provision of a lease from the

Franklin Company, predecessors in title to the plaintiff, to the city of Lewiston, on November 5, 1887,—

"Now, therefore, in consideration of the premises and the sum of money hereinafter named, the said Franklin Company hath demised, let and leased, and doth hereby demise, let and lease, to said City of Lewiston and its successors, the right to take so much water every twenty-four (24) hours, for domestic, fire, mechanical, manufacturing, and other purposes, as six hundred (600) horse-power, at a head of twenty-five (25) feet, will pump from the Androscoggin River above the dam, near the Lincoln Mill, so-called, in said Lewiston, to a height of two hundred and twenty (220) feet twelve (12) hours in such twenty-four (24); said City of Lewiston and its successors to have the right to pump said above stipulated quantity of water during any part or all of the twenty-four (24) hours; and for the same consideration, the said Franklin Company hath demised, let and leased, and doth hereby demise, let and lease to said City of Lewiston and its successors, the right to take, in the alternative, said supply of water, for the purposes aforesaid, from Wilson Pond, in Auburn, in the said County of Androscoggin, provided said City of Lewiston, or its successors, shall, by due corporate act, so elect at any time hereafter; and provided, further, that the water so taken shall not exceed in quantity the measure above set forth, nor shall the rights herein conveyed exceed the extent of the present legal rights and privileges of said Franklin Company in the waters of said Wilson Pond; and provided, further, that, in so taking and using said water from Wilson Pond, said City of Lewiston and its successors shall not endanger the safety of any dams, gates, or works whatsoever of said Franklin Company, its successors or assigns, which are now erected and used in connection with the waters of said Wilson Pond, or which shall hereafter be so erected and used by them; and for the same consideration, the said Franklin Company hath demised, let and leased, and doth hereby demise, let and lease to said City of Lewiston, and its successors, as appurtenant to the said land conveyed as aforesaid by said Franklin Company to said City of Lewiston, the right, privilege and easement of drawing from said Androscoggin

River, above the dam, near the Lincoln Mill, so called, in said Lewiston, water to the extent of six hundred (600) horse-power for the purposes of pumping and distributing the water aforesaid from said river; provided, however, that for said six hundred (600) horse-power, the head shall not be less than twenty-five (25) feet, nor exceed thirty (30) feet.

"To have and to hold said water and water power, and the right, privilege and easement to draw and use the same, as above described, to said City of Lewiston and its successors so long as said City of Lewiston and its successors shall continue the use of the same for the purposes aforesaid. And said City of Lewiston covenants and agrees with said Franklin Company and its successors and assigns, in consideration of the premises, to pay said Franklin Company, its successors or assigns upon the execution and delivery of this Indenture, the sum of Two Hundred Thousand Dollars ($200,000)."

After taking water from the Androscoggin River for some years it was found to be so impure as to endanger health, and the city elected to take its supply from Wilson Pond, and has done so since January 20, 1900. The plaintiff claims that the grant of six hundred horse-power for pumping is confined to pumping water from the river, and that the right ceased when the city took its water from the pond. The defendant claims that the grant of power was absolute, and can be exercised by it whether the water pumped comes from the river or the pond. The city has acted upon its construction of the lease; hence this suit.

That the language of the lease is susceptible of either construction is apparent. The understanding and intention of the parties at the time the lease was executed, if not inconsistent with its express terms, must govern. To ascertain that, it is useful to look at the situation of the parties, the objects to be attained, and the acts and negotiations leading up to and culminating in the written contract. As was said by SHEPLEY, J., in *Merrill* v. *Gore*, 29 Maine, 348: "To ascertain the true construction of a written contract, the situation of the parties, the acts to be performed under it, and the time, place and manner of performance may be considered.

"The intention of the parties is to be ascertained by an examination of the whole instrument and of its effect upon any proposed construction, and such a construction should be adopted as will carry that intention into effect, although a single clause alone considered would lead to a different construction." *Snow* v. *Pressey,* 85 Maine, 417.

Prior to 1873, the city of Lewiston was considering the subject of a water supply for domestic use. In that year the Legislature, by c. 386 of the Special Laws, authorized Lewiston and Auburn to take water from Wilson Pond for "domestic purposes, extinguishing fires, and the supply of hotels, livery stables and laundries within said cities," but not "for the purpose of propelling machinery, nor for any manufacturing purposes." In 1875, c. 107 Special Laws, the act was amended by allowing either city to proceed alone, and permitting water to be taken from Wilson Pond "or the Androscoggin River."

In March, 1875, a special committee of the city council reported that they had had the water of Wilson Pond and of the Androscoggin River analyzed, and found but little difference in their purity. In April, 1875, acting under the act of 1873, as amended by the act of 1875, the city elected a board of water commissioners as provided in the act, who were directed to make investigation of the several systems of water supply. February 11, 1876, the Franklin Company, through B. E. Bates and others proposed in writing to the city that if it would give "$200,000 for the right to take from the Androscoggin river at the dam, whatever water she may want from time to time for domestic, fire, mechanical and manufacturing purposes, including the right to use 600 horse-power for the purpose of pumping and distributing the same, and of repairing the water works in case of need," "the corporation would buy the control of the lakes and employ it [the control] for the promotion of the general interests of your city," and expressed the belief that the Franklin Company would sell to the city for $100 the site of the saw mill "with sufficient land for a pumping station." March 7, following, William B. Wood presented to the city council a memorandum as the understanding of the Franklin Company of what

the city was to receive for $200,000. This memorandum described the land to be conveyed, and the water and power to be leased in the language of the lease subsequently made, except that it contained no provision for taking water from Wilson Pond. A meeting of the citizens was called for April 22, 1876, to vote upon the following questions:

"Shall the City Council be authorized to invest six per cent bonds of the city to the amount of two hundred thousand dollars, providing the manufacturing corporations of the city shall buy the control of the lakes at the headwaters of the Androscoggin River for the promotion of the general interests of the city, and shall also secure to the city the following rights:

1. "The right to take from the head of the dam or from Wilson Pond all the water wanted for domestic, fire, mechanical, manufacturing and other purposes, with 600 horse-power in addition for pumping, distributing and repairing purposes.

2. "The saw mill site near the dam with about forty thousand square feet of land and passage ways from Main Street on upper and lower levels with the right to lay pipes across the canals and land of the Franklin Company to Main Street."

The vote was in its favor and gave the city council full authority. This proposition upon which the citizens voted very clearly expressed the idea that the power for pumping was to be granted absolutely, whether the water used by the city was taken from the river or from Wilson Pond. In accordance therewith, on July 23, 1877, the city council authorized a water works loan. At the same time a memorandum of agreement was presented by the Franklin Company, which provided for taking water from the river only. To this agreement the city council made four amendments, the first two of which only are of importance here.

"1. The city shall have the right to take its supply of water from Wilson Pond, should it so elect in the future.

"2. The city shall have the right to pump its supply of water during any part or all the twenty-four hours."

These amendments clearly imply that the city council expected to have and use the pumping power without regard to the source of water supply, for the case shows that water from Wilson Pond could not be taken by gravity, but must be pumped.

The Franklin Company adopted these amendments, and on August 7, 1877, submitted a new memorandum of agreement, or the old one amended, to which was added "the right to take its supply of water from Wilson Pond, if it shall so elect in the future, not exceeding in quantity the measure thereof above set forth."

Then followed on November 5, 1877, a deed from the Franklin Company of the land for the city's works, and the lease in controversy, and a waiver by the other mills of their prior rights to water, giving the city the first and superior right.

This history of the case clearly shows that the citizens of Lewiston when they voted, and the city council in all it did, understood that the city was acquiring the right absolutely to the pumping power, to be exercised whether the water for the city's use was taken from the river or the pond. No objection appears to have been raised at that time to this view by the Franklin Company. On the contrary, the waiver of prior rights to the water by the Franklin Company, and the other mills on the river at Lewiston, executed concurrently with the lease, recites that the city had appropriated $200,000 "for the purchase of the Franklin Company of the old saw mill site, so-called, in Lewiston, for the location of the power, machinery and certain buildings necessary to the water works for said city, also six hundred horse power, and of so much water for domestic, fire and other purposes as said power will pump," etc. Nothing is said about taking water from the river, strongly indicating that, at that time, the Franklin Company did not entertain the idea that the pumping power was limited to taking water for consumption from the river only.

The only phrase in the lease which tends to sustain the construction claimed by plaintiff are the words "pumping and distributing the said water from the said river." These words were in the original draft, when the river only was thought of as the source of supply, and were retained in the final draft, probably from inadver-

tence, because contrary to the express understanding of Lewiston, and the plain implication of the understanding of the Franklin Company. To allow them to be of controlling force would be an illustration of the maxim "qui haerit in litera haerit in cortice."

The effect of adopting the construction claimed by the plaintiff may be looked at to aid in arriving at the intention of the parties in their contract. When the city ceased to take its water for consumption from the river, it left in the dam the quantity it had been entitled to take, to be utilized by the mills for power. The city uses no more power to pump the water from the pond than would be necessary to pump from the river. Plaintiff did not own the water of Wilson Pond. That was a great pond as defined by the Colonial Ordinance of 1641–'47, and was the property of the state, held in trust for its citizens. The state had the right to grant, and did grant to Lewiston, the right to take its water from the pond. The plaintiff was not entitled to damages for such taking. *Auburn* v. *Water Power Co.*, 90 Maine, 584 ; *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548.

According to plaintiff's contention the city received for its $200,000 the parcel of land which the Franklin Company offered to convey for $100, and the use of the water and the pumping power for the few years it took its water from the river; but since it changed its source of supply, it has lost the pumping power, and takes nothing from the plaintiff which it owned, or had a right to convey. The city expected a perpetual right, and the Franklin Company expected to grant it. The result claimed by plaintiff could not have been in contemplation of either party, when the lease was executed. If it had been supposed that such result would follow the exercise of the right by the city to go to Wilson Pond, it is inconceivable that the city would have paid this large amount, or that the Franklin Company would have asked it. Consequences like these should be avoided, if the contract can fairly be construed to accomplish it. A single phrase, not in harmony with the spirit of the contract and the object to be attained by it, should not be allowed to produce this effect.

Great stress is laid by the counsel upon the convenience of the

plaintiff in taking water from the pond, its outlet being into the Androscoggin river, on account of its proximity to Lewiston, in case of shortage of water. But this convenience must yield to the necessity of pure water for domestic uses, where the legislature deems such necessity to exist. *Auburn* v. *Water Power Co.*, supra.

But the argument of convenience has little force when the facts are considered. The supply of water to Wilson Pond is fifteen million gallons daily. Lewiston can consume not over one million gallons daily, probably much less than that—less than one-fifteenth of the supply. All the remainder is subject to plaintiff's use for manufacturing purposes. The quantity taken by Lewiston is comparatively so small that its withdrawal from the pond cannot perceptibly lessen the size of the stream at its outlet. An equal quantity is left in the river for plaintiff's use, which otherwise would be withdrawn.

To effectuate the intentions of the parties, the contract should be read as "pumping and distributing the said water from the said river or from Wilson Pond." Such transposition of the words of the lease will effectuate the evident intention of both parties, at the time the lease was executed, and is in harmony with the general scope, spirit and purpose of the lease. An opposite construction would defeat the object for which Lewiston paid $200,000, and allow an unconscionable advantage to the plaintiff.

It is unnecessary to invoke the rule, sometimes, though rarely, applied, that where the language of a grant is susceptible of two constructions, that should be adopted which is most favorable to the grantee. *Richardson* v. *Palmer*, 38 N. H. 218; *Worthington* v. *Hylyer*, 4 Mass. 205.

We think the true construction of the lease, taking it altogether, and viewing it in the light of the surrounding circumstances, and the objects to be attained, is, that the Franklin Company granted to the city of Lewiston during the continuance of the lease, the absolute right to use six hundred horse-power for pumping and distributing water in the city, and that the city may take such water from the Androscoggin river, or from Wilson Pond, at its option.

*Judgment for defendant.*